Good morning. I'd like to reserve two minutes for rebuttal. My name is Dan Albrechts. I am here on behalf of Mr. Mack. Mr. Mack is back. Mr. Mack is back. Today we are here to determine whether or not, without a written waiver of his right to a jury trial, the colloquy between the court and the defendant over a few months was enough to show that he expressly, intelligently, and knowingly waived his right to a jury trial. Well, if this were Mr. Mack's first foray into the federal system, it might be a little different. But why shouldn't we take some judicial note of the fact that he had the He's made a different claim, but, I mean, all of that should have given him some notice of his rights, don't you think? Well, the answer to that — As a matter of common sense, if nothing else. Well, the answer to that, I think, lies in this Court's own words in the first Mack opinion. And you concluded by saying, and I'm not sure how to pronounce this word, I apologize, but the simulacrum of a trial, which is how you — This is how Fernandez is — Is how you described that first trial. Would it be permitted to serve in the place of the real thing? And you all said you thought not. And given the nature of that trial and what went on in that trial, I think this Court recognized that it didn't rise to the level of a jury trial that an individual is entitled to. Well, that may be true, but if you're talking that the district court the second time around didn't explain to him what a jury trial was and what might happen in a jury trial and what the difficulties are, shouldn't we be able to factor in the prior jury trial as a matter of common sense when the judge is talking to him? I think you absolutely can. I think you can factor that in, in the penelope of factors that you would look at to determine that. But I think what trumps that, and the government in their brief completely ignores it, is what Mr. Mack said on the morning of trial, on judgment day, when he was seated in the courtroom and had to make the final decision between a jury trial and a bench trial. And he said to the judge — You mean the second trial? The second trial, yes, sir. And he said to the judge, could you explain to me the disadvantages and advantages of going to court in front of you instead of a jury trial? There's no doubt that Mr. Mack expressly waived his right to a jury trial. That's cited by the government, in fact, cited by us in our opening brief. The question becomes is, is it intelligent and knowingly? And even though he had that prior jury trial, I think that question to the judge that morning reflects that he really didn't know the advantages and disadvantages. But the judge then explained it to him. Well, no, he didn't. With all due respect, Your Honor, what the judge said was he told him the advantages of a bench trial, because if you look at the trial transcript on page 14, which is our excerpt of record page 15, he says, I can't give you advice as to what the advantages or disadvantages there are to anybody. Now, first of all, that sentence is wrong, because I think case law says that the district judge is supposed to, at least to some extent, talk about the advantages and disadvantages of a jury trial versus a bench trial. But he continues and says the clearest advantage is the ability to what his trial counsel or his standby counsel touched upon, which is addressing issues of law and And that's going to be a fundamental advantage, the judge said. But he continued to say, I'm not going to get into a debate about that now. He never once said to Mr. Mack, well, these are the disadvantages that you need to consider before you go to a trial before a bench, disadvantages such as 12 unanimous jurors are going to have to decide as opposed to one judge, disadvantages such as facts that the judge knew at the time that a jury wouldn't know related to the case. Now, one could say that a district judge shall and must and will put aside those things, but Mr. Mack should have been given the opportunity to think about the fact that this judge knows that a prior jury convicted you. This judge knows how you acted in that prior jury trial. This judge knows that you made statements to the police that aren't going to be admissible to a jury. All these sort of things are the disadvantages that Mr. Mack should have had explained to him. Well, he did have it explained to him. I mean, in the record, there is a lengthy colloquy between the judge and Mr. Mack explaining to him the difference between a jury trial and a trial before the bench. I didn't – I don't see a lengthy discourse about the disadvantages. I only saw about the advantages. And I would – I mean, there are – there are – I mean, you would – if you waive and go to trial to a bench – it says, if you waive jury and go to trial to a bench trial, what would happen would be instead of a jury deciding guilt or innocence, it would be the judge deciding guilt or innocence, and the judge would make also decide any sentencing factors on and on. What's that? And that's the same time where he's asking about what effect – again, at this time we were in the midst of the Blakeley and Companion cases, those decisions. And it's during that time that the judge says – when he finishes, he says, it's confusing to you, it's confusing to me, it's confusing to everybody because we're talking about a new development. That brief little colloquy, I don't believe, rises to the level of the judge. Well, then it goes on, Mr. Mack, and you've been through this before because you had the right – you had a trial before, the jury before, so you understand that I realize. But I want to make sure you understand that you have the right to have your case tried by a jury, selected in the same fashion as the one before Judge Hunt. That was his previous trial. Right. You do understand that, don't you, the defendant? I decline. No jury trial. I'm going to let you decide it. Well, first of all, he doesn't say, yes, I understand, and therefore I decline. He says I decline. But more importantly, on the morning of trial, there is still some hesitation and some question about whether he knowingly and voluntarily or knowingly and intelligently is waiving that right. Later on, but you understand you have the right to have a jury if you want to. Understand that, the Court. All right. Defendant, I don't want a jury trial. I want you to do it. And our position is whether he's had a chance to talk with Mr. Posen about it. He says, yes, I have, Your Honor. Three months later, two months later. Mr. Posen is a standby counsel. Mr. Posen is a standby counsel. There's nothing in the record to indicate what he and Mr. Posen spoke about. Isn't there – refresh my recollection. Didn't the standby attorney say that what the defendant is doing is consistent with the advice he gave you? Yes. Just like you would do in a plea colloquy, where judges routinely say to me, is this advice to plea guilty consistent with your advice to the client? I say yes. And then the judge goes forward and goes step by step as to all the rights they're giving up. I understand that, but you said there's nothing in the record about that. There's something in the record, at least to the extent that the standby attorney did advise him to waive the jury. He indicates that it's consistent with his advice, yes. Well, I'm just having a hard time seeing – I, of course, as a district judge, see these jury waiver forms frequently. Right. I'm having a hard time seeing – now, maybe it would have been better to get one, obviously. Rule requires it. All right. But I'm having a hard time seeing what the jury waiver form would have said that the judge didn't say and he agreed to. Well, I think – The jury waiver form doesn't specifically say it's a terrible idea, don't do it. I agree. And the waiver form is somewhat prophylactic, and the case law says that if there is other colloquies like here, that it could be enough. But this would be akin to a phoretic canvas where you say to the defendant, look, if you don't go to trial with an attorney, then you get to talk to the jury and you get to ask witnesses questions and you get to do a closing argument and you get to be involved. And we won't have an attorney, you know, doing it for you. We won't have you having to write notes. That would never be a good phoretic canvas. And I would suggest to the Court that that's exactly the type of canvas that was done here on the morning of trial when he said, I can't talk about the advantages or disadvantages, but the advantage of doing it without a jury is that we can get through it quicker and, you know, you won't have to have these arguments outside the presence of the jury. And so that's why we don't think it was a knowing and intelligent waiver. I've done my time. I'll reserve the remainder of your time for a moment. Thank you. Good morning, and may it please the Court. Robert Ellman for the United States. This is a case where the defendant is raising two claims, which I think are equally untenable. The first is that a defendant who has actually had a jury trial has not sufficiently understood his jury trial rights such that he may waive a jury trial upon remand after a successful appeal. The second issue is that in a case where the government's expert testifies that the substance the defendant sold is cocaine-based, the government hasn't proven that the substance the defendant sold was cocaine-based. Are you really suggesting that if a defendant goes through a jury trial once, that the government doesn't need to do anything in terms of obtaining a waiver? It doesn't have to say anything. Just say, okay, we accept your waiver. Where the defendant has expressly waived it and requested to forego a jury trial, I believe that is sufficient right there, Your Honor. And I'd like to point you to a case actually, and this is a case in which the defendant had successfully challenged the voluntariness of his guilty plea on appeal. The case is McCall v. Arizona, 544 F. 2nd at 1030. The court reversed in that case, saying, there had been no previous trial of the same issue by which the defendant could have acquired empirical knowledge of the formalities of a trial and the decisions to be made during its course and obtained some idea of the likelihood of success or failure. The defendant in this case, by virtue of his jury trial, has that empirical knowledge. But the holding of McCall wasn't that a colloquy wasn't required. It just made an observation that he hadn't been through the system before. That's correct. This defendant has been. Do you have a case that holds that if a defendant has had a jury trial, that it's not required? I don't think you do. I looked and looked, Your Honor, and I'll be candid with you. I cannot find one. I don't think there's a case where an appellant had sufficient zeal to say that even though I've had a jury trial, I didn't understand what my jury trial was. So how do you deal with Cochran in all those cases? Well, we set out in Cochran what ought to be said, among other things, and the words weren't uttered in this case. Well, Cochran does not hold that absent a colloquy, you have reversible error. What Cochran holds and what Christensen as well holds is that if you have in the first instance the absence of a written waiver, you have to look further. The government enjoys no presumption of validity. But what the cases say is that what does service for that is an express oral waiver in open court with consent of the government and defense counsel, which you have here. So we've overcome. I agree that Cochran didn't establish an automatic rule, but it did set forth some things that ought to be said to the defendant to make sure that the waiver was voluntary and knowing. And those, you have to concede, the Cochran admonitions weren't made in this case. Well, there are a number of cases along the Cochran line, all of which hold that reversal per se does not result for lack of a colloquy. I'd say in addition to Cochran, you have Bishop Duarte Higareda is in this record. There are, when you reach that point, absent a fact that gives rise to a presumption in favor of validity, then you have de novo review and you look at the record. And this record is replete with information indicating beyond any doubt that this defendant under these circumstances understood precisely what his trial rights were. The first and most obvious fact, which you've already explored, is the fact that he had a jury trial. He knew exactly what that entailed. There are, I think another way to approach this, Your Honor, is to look at what that suggested colloquy sets forth. There are four specific facts. It doesn't require a judge to explore all of the advantages and disadvantages of a bench trial versus a jury trial. It requires the court to inform the defendant, first of all, that he or she is entitled to a jury by 12 members of the community. Well, Mr. Mack knows that because he's had that trial. Well, Judge Crow also told him that separately. Yeah, I'm not sure if he said that there had to be 12 jurors. No, but he said that he had the right to a jury trial. Absolutely, Your Honor. And you cited to that passage already. So that's in the record. He has to be told that he has a right to participate in jury selection. Well, he knows that because he's already selected a jury once before. He has the right to know that if he waives a jury trial, then the judge will be the person deciding the facts in the case and determining guilt or innocence. Obviously, he knows that as well. And he has to be told that the jury must be unanimous. Well, he sat through the first trial. He was present when the jury was instructed. So he knows about the unanimity requirement. Opposing counsel cannot point to a single fact in the record that indicates either that the waiver in this case was involuntary or that Mr. Mack lacked any of the information that would have been provided if the court had meticulously followed every point of the colloquy. Is there anything in the record to indicate that Mr. Mack was mentally challenged in any way? No, there is not, Your Honor. And in fact, defense counsel advised the court that Mr. Mack was competent and that there was no reason to suspect otherwise. And I cite you to the appellee's supplemental excerpts of record at page 34. And actually, I believe that Christensen has been misquoted in the opening brief because the defendant says at page 11 and again at page 18 that when you don't have a written waiver, then you have reversal per se. Christensen was very clear on that point and says that when you don't have the – I'm Christensen is limited expressly and on its own facts to cases in which there's a substantial issue about the defendant's ability to understand or – and that has been extended as well to language barrier. I'm asking the question whether there was anything that I may have missed in the record that indicated that he might be mentally deficient in some way. And the answer is no, Your Honor, nothing, whatever. And unless the court has any further questions, I'll submit a question. Thank you, counsel. Judge Esper, just so we're clear, I agree with counsel on the mental issue. There wasn't anything in the record. In fact, that was brought up. So that's not an issue we're claiming. But let me suggest this. He was given a prior trial. This Court's already found that that really wasn't the type of trial that was the type that a defendant deserves, even a defendant of this nature. Difficult clients. We have them. You all have to deal with them. And it was reversed. In light of the fact that these are – this is – the underlying case are hand-to-hand sales. It's your classic Southern Nevada drug case where they have surveillance officers, you know, they've got an undercover officer. Even on all of those facts, this Court found that prior jury trial was such that he should get a new one. Now, on – in the June calliloquy that you cited, Mr. Mack says, because you know, there was some incidents that happened in the jury. And it's, you know, I mean, I'm not pegging all the jurors in that. And, you know, it's like saying – I'm not saying I heard that you, one of the most liberal judges on this committee, I would just rather go in front of a judge. He, as you know from the prior case, there were incidents with a juror's spouse sitting in there. He was alleged to have threatened the spouse. He is choosing a judge trial because of what he thinks is going to happen in a jury trial based upon what happened in his prior jury trial. And I think that alone is enough to make it unknowing, not voluntary, and not intelligent. Because he thought what happened in front of Judge Hunt would happen again with a new jury, and he was never going to get a fair trial in front of a new jury. And I would suggest to you, that's why on the morning of trial, he's saying again, can you tell me the advantages and disadvantages? Had he had a trial that I would term a regular trial, one that goes through, you know, you have your – your disagreements between counsel and advocacy and everything else, and then he waived that, I would agree with you and say it's a knowing and intelligent waiver. But he was under the misimpression that what happened the first time would happen again in front of the jury. And he thought the way to avoid that would be to go to a judge trial instead of a jury trial. And that makes it involuntary and unknowing. Thank you, counsel. Thank you. The case has heard and will be submitted. I'll go to the next case on the oral argument calendar, which is United States v. Wilson.
judges: Wallace, Thomas, Ezra